IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **DORIS HABY,** § | | |
| Plaintiff § | | |
| § | | |
| v. § | | |
| § | | **CIVIL ACTION NO.** |
| § | | **5:20-cv-69** |
| § | | |
| **TIME WARNER CABLE** § | | |
| **PENSION PLAN,** § | | |
| Defendant § | | |

## PLAINTIFF'S ORIGINAL COMPLAINT

The Administrator of the Time Warner Cable Pension Plan wrongfully denied death benefits to Doris Haby.

## I. PARTIES

1. Plaintiff Doris Haby is a resident of China Grove, Bexar County, Texas.

2. The Time Warner Cable Pension Plan (Plan) is a pension plan providing benefits to its employees in Texas. The Plan owes Plaintiff Doris Haby death benefits. The Plan can be served with citation by serving Paul Marchand, Member of the Pension Plan Appeals Committee, c/o Charter Communications, Inc., 400 Atlantic Street, Stamford, CT 06901.

1

## II. JURISDICTION AND VENUE

3. This lawsuit is a claim for death benefits provided by an ERISA pension benefit plan brought under 29 U.S.C. §1132(a)(1)(B). This court has jurisdiction over this claim for death benefits under 29 U.S.C. §1132(e)(1) of the Employee Retirement Income Security Act of 1974 ("ERISA"). Venue is proper in the Western District of Texas, San Antonio Division, in accordance with 29 U.S.C. §1132(e)(2) as the death benefit payment obligations under the Plan are to Haby at her home in China Grove, Texas.

## III. STATEMENT OF FACTS

4. Doris Haby's brother, David Clifton, worked for Time Warner Cable (TWC) for a number of years and as a result became vested in its pension plan. He was terminated on or about June 25, 1997.

5. On October 10th, 2018, Plaintiff Doris Haby, David Clifton's sister, helped Clifton establish an online account regarding his vested pension benefits under the Plan. The online information indicated that Clifton had a vested pension with a value of $41,840.72 as of October 10th, 2018. The online account allowed Clifton to designate a beneficiary for death benefits payable to his beneficiary in the event he died before commencement of his pension benefit. He designated his sister, Doris Haby, as 100% beneficiary of any death benefit that might become payable.

6. Clifton died on October 28, 2018 at age 60. He died before he could receive any pension benefits under the Plan, as the commencement date for his pension was not until his 65th birthday.

7. Since Clifton died before receiving any pension benefits, Haby made a claim for death benefits. Her claim was denied by Beth Biggs, an executive within the benefits office of Charter Communications, owner of TWC.

8. The basis of her denial was that the plan amendment effective January 1, 2000, allowing a death benefit for non-spousal beneficiaries of a plan participant such as Doris Haby, did not apply to Clifton because his employment with TWC terminated prior to the effective date of the amendment. She relied upon Plan §1.3, stating that as "a general rule, a participant's benefit will be governed by the terms of the Pension Plan in effect as of the date of the participant's termination of employment, unless otherwise specifically provided in the Pension Plan."

9. Through counsel, Haby appealed. She noted that Plan §1.3 provided as follows:

> "The benefits provided hereunder with respect to any Participant who retired or whose employment with an Employing Company otherwise terminated prior to the Restatement Date will, except as otherwise specifically provided herein, be governed in all respects by the terms of the Plan as in effect as of the date of the Participant's retirement or other termination of employment…"

10. She pointed out that the Restatement Date was defined by the Plan as January 1, 1997, prior to Clifton's termination of employment, and therefore Plan §1.3 did not apply to Clifton.

11. In her appeal, Haby stressed that Sections 5.11 and 8.1(a) applied to Clifton and his benefits under the Plan.

Section 5.11 states in relevant part as follows:

> "Death Benefits. (a) If a Participant's benefits first become payable following his death, such benefits to the Spouse or other Beneficiary shall commence in accordance with Article VIII."

Section 8.1(a) of the Plan states as follows:

> "Death Prior to Benefit Commencement. (a) Effective January 1, 2000, (i) if a Participant dies with a nonforfeitable interest and prior to his Benefit Commencement Date, his Beneficiary shall receive monthly payments in the form and in the amount such Beneficiary would have received if the Participant had begun receiving benefits at the earliest date permissible under the terms of the plan (assuming the Participant had terminated employment the day before his death if he died during employment) and had specified his Beneficiary to receive 50% of the monthly amount payable to him."

12. Paul Marchand, Executive Vice President with Charter Communications and Member of the Pension Plan Appeals Committee, denied Haby's appeal by letter dated July 8, 2019.[1] He indicated that the Plan provision that allowed a death benefit to a non-spouse became effective January 1, 2000, and since Clifton did not work at least one hour for TWC after January 1, 2000, and since he did not commence his pension benefit prior to his death, the Plan did not allow for a death benefit to Haby. Marchand also advised that even though Clifton was permitted to name Haby as a beneficiary for death benefits within the online

---

[1] Marchand and Biggs are collectively referred to in this Complaint as the Plan Administrator.

enrollment system, this event did not alter the fact that the 2000 Plan amendment, allowing death benefits to non-spouse beneficiaries, did not apply to him.

13. Marchand advised Haby that the appeals decision was final, and that she retained the right to file suit under Section 502(a) of ERISA.

## IV.  CAUSE OF ACTION UNDER ERISA

**Exhaustion of Appeal Requirements**

14. Haby exhausted her appeal rights as required by the Plan and ERISA claims regulations.

**The Final Denial Was Contrary to a Preponderance of the Evidence, or, in the Alternative, Was an Abuse of Discretion**

15. If the standard of review of the Plan Administrator's decision is determined to be de novo, the default standard of review for ERISA benefit denials, then the decision to deny Haby's death benefit is contrary to the preponderance of the evidence. If the Plan Administrator is found to have been granted proper discretionary authority by the Plan that allows for an abuse of discretion standard of review, the Plan Administrator's decision to deny death benefits to Haby was an abuse of that discretion.

16. The Plan Administrator's final decision was an abuse of discretion because it is contrary to the plain language of the Plan. The amendment to the Plan effective January 1, 2000, that allowed for a non-spouse death benefit applied to all Plan participants who had vested pension benefits as of January 1, 2000, not just those who were employed at least one hour after January 1, 2000. Since

5

Clifton was a vested Plan participant, i.e. had a nonforfeitable interest, as of January 1, 2000, and since Clifton died prior to his pension benefit commencement date, under Section 8.1 of the Plan, his named beneficiary, Doris Haby has a right to death benefits under the Plan.

### Claim for Death Benefits Under the Plan

17.  Haby seeks to recover death benefits due her under the Plan under the authority of 29 U.S.C. §1132(a)(1)(B) of ERISA.  According to Section 8.1 of the Plan, the death benefits owed to her under the Plan are "monthly payments in the form and the amount (Haby) would have received if the Participant had begun receiving benefits at the earliest possible date permissible under the terms of the Plan and had specified (Haby) to receive 50% of the amount payable to him."

## V.  RELIEF REQUESTED

18. Haby requests an order by this Court declaring that she is entitled to death benefits under the Plan.  She requests that the Court then refer this matter back to the Plan Administrator for the limited purpose of determining the benefits owed, with the Court retaining jurisdiction to render final judgment in favor of Haby for the amount owed by the Plan.

## VI. ATTORNEY'S FEES

19.  Haby requests her attorney's fees and costs under 29 U.S.C.A. 1132(g).

## CONCLUSION

Wherefore, premises considered, Haby requests an order declaring her right to death benefits under the Plan. She also requests her attorney's fees, for pre-judgment interest at the maximum rate allowed by law, post-judgment interest, and for such other and further relief, both at law and in equity, to which she may show herself to be justly entitled.

Respectfully Submitted,

**Law Office of Jeffrey E. Dahl**
The Travis Building
405 N. St. Mary's Street, Suite 242
San Antonio, Texas  78205
(210) 527-0900 (Telephone)
(210) 527-0901 (Facsimile)
jdahl@erisaattorneyintexas.com

By:   */s/ Jeffrey E. Dahl*
**Jeffrey E. Dahl**
**State Bar No. 05310900**
**Attorney for Plaintiff Doris Haby**